My name is Peter Schweda. I represent Justin Youngman in this matter. Mr. Youngman pled guilty to conspiracy to deliver more than 50 grams of methamphetamine, which carries a five-year minimum mandatory sentence. The United States government filed a substantial assistance motion. The defendant asked the court to disregard his only counting conviction, which was a third-degree driving with license suspended, because it was the crime had been ruled unconstitutional by the Washington State Supreme Court, and asked the court to consider a safety valve consideration because of that. The court denied the defendant's position. The defendant was sentenced to 51 months. If the driving with license suspended conviction had not been counted, all other things being equal, his range would have been 37 to 47 months. There, we would like to submit two issues for the court's consideration, one, whether the driving with license suspended conviction should be counted under the guidelines and whether the safety valve consideration should be made, and two, whether the case should have a limited remand under the Booker case. The third-degree driving with license suspended is a status crime. In other words, if you don't pay your traffic tickets, your license gets automatically suspended. Let's see. Is your, Mr. Chueda? Yes, Your Honor. Suppose this is, well, consideration of what you've told us is the unconstitutional prior conviction. Correct, Your Honor. You'd say it's improper. The judge should not have considered that to preclude a reduction under the safety valve provision. Now, if the guidelines no longer being mandatory, if this case were to be remanded to the district judge and the district judge needs to consult the guidelines, he would consult the guidelines but say, you know, because this thing was unconstitutional, that is a consideration, and considering other things, I'm going to grant the reduction. Could he do that? I agree with that, Your Honor, and that's our position. That he could do that? Yes. So if you get a remand for resentencing, you don't have to worry quite as much about the argument you're making on taking into account the unconstitutional statute? That's correct, Your Honor. Okay. As I understand it, the conviction itself has not been affected. That's correct, Your Honor. He has not gone in to try to get the conviction set aside. That's correct, Your Honor. And there's some inherent problems with that, too, because they require his personal presence to be in court to have a motion in Spokane County to do that. There are some counties in Washington that I understand are just automatically reversing the spare degree driving with license suspended cases. Spokane County is not one of them. The – here, the probation officer found the facts necessary for the court to find that it was the status crime of not paying the traffic tickets. The – also, Your Honor, the application note for the sentencing guideline section 4A1.2, application note number 6, talks about what sentences that we should count. Sentences resulting from convictions that, A, have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, which doesn't apply here because his conviction stands, or, B, have been ruled constitutionally valid in a prior case, are not to be counted. And I would submit, Your Honors, that the city of Redmond v. Moore is exactly – comes under number B because his case has been ruled unconstitutional in a prior case. Well, the statute was held unconstitutional, but not in his case. In other words, there's a case on the books that said the statute's unconstitutional, but it wasn't his case. Correct. It wasn't his case. Right. But it was – the case was to the whole class of people who had their driver's license suspended because they hadn't paid traffic tickets. So it – in other words, what – well, our position is that because it is a status crime, if you don't pay your traffic ticket in the old days in Washington, you automatically lost your driver's license, didn't get a chance to a hearing. And so for those – for that whole class of people, the crime was ruled unconstitutional in city of Redmond v. Moore. Why is it so difficult for your client because he's serving time that he can't personally go to Spokane? I'm sorry, Your Honor. Your client can't go to Spokane to get an expense now because he's serving time? Yes, Your Honor. Where is he doing his time? I have that. I don't – I can't tell you offhand, but he is in a federal institution. The – Doesn't Note 6 pretty well torpedo your argument, as long as that note stays in place – stays in play, that this is a – clearly a collateral attack on the state condition? Well, if – if that's – if that's true, then the application note – I would say that application note number 6 is ambiguous at best, because you have to read it in conjunction with the last clause of the first sentence that says, has been ruled unconstitutionally invalid in a prior case. Counsel, do you think that if we remand, these arguments are better made to the state court, then we can completely disregard Note 6 now? That's – that's absolutely correct, Your Honor. That's absolutely correct. And I would submit, in the true sense of a collateral attack, Your Honors, that this – the idea of a collateral attack is two things. You don't want to vacate a state court – final judgment of a state court, give it its due, and you don't want to have factually intensive hearings. Here, Washington State isn't going to recognize this conviction. So – and it's not a factually intensive thing that you have to go through to determine that. Finally, Your Honor, we would ask that the court remand for resentencing under Booker and the last Ameline case, because here we did have – this was his first felony conviction, and he expressed remorse and apologized at the court. And I think that that alone shows prejudice. Thank you, counsel. Thank you. Good morning. May it please the Court. My name is Stephanie Whitaker. I represent the United States. Ms. Whitaker, why shouldn't we remand this under Booker and maybe Ameline, and why shouldn't we do that? Your Honor, because I don't believe that this case falls under the purview of Booker. The sentence imposed by the district court in this case was not subject to a mandatory guideline system. It was subject to, first, the mandatory minimum sentence that is set by statute and, second, by application of substantial assistance, which is also a statutory application. And then it went to the decision upon the district court in exercising his full discretion as far as how far down to depart based upon the defendant's substantial assistance. And could the court have departed downward without a motion from the government to depart downward? In this particular case? Yes. Not without a 3553e motion from the government. From the government. Which would have – which took out that mandatory minimum. But is that a motion under the guidelines that the government would make? The 3553e is not a motion under the guideline. It is a motion pursuant to statute. To statute. But once the motion was made, then there was a guideline range that was determined from that, right? Once the 3553e motion was made, the district court made the guideline determination based upon primarily stipulation of the parties as to what the drug quantity was. And that was a stipulation within the plea agreement. And that assigned an offense level. However, once the 3553e motion was made, the district court could have had the discretion to depart as far down as he wanted to based upon the level of substantial assistance and application of the statutory factors. The guidelines, although he signed a guideline that could have been in place, he had the discretion to go as far down as he wanted based solely upon the substantial assistance motion made by the United States. So he was not bound by any mandatory scheme once that 3553e motion was made by the United States. Didn't that, though, produce a guidelines range? Was that, I mean, at some point he sentenced Mr. Youngman to the low end of the guideline range? Your Honor, I think what the Court ended up doing, if I can go back to the Court's reasoning, the United States had initially only requested to, for a 60-month sentence, which the Court equated was a one level. Based upon the level of assistance, the district court expressly stated that he felt it deserved more time than that. And so he did depart down two levels, which did assign a range of 51 to 63 months. However, I think that based upon the Court's analysis, that was not a binding by the guidelines. It was rather a determination of how far to depart based upon the substantial assistance. I don't think that there's any indication in his ruling that he believed that was his belief in exercise of discretion of how far to depart based upon what was presented to him. Well, the thing that troubles me about that, and I have to think about it further, but the aspect of this argument that troubles me is that ultimately the mandatory nature of the guidelines did affect his decision, because he departed downward levels and then he's sentenced within that range. And there is the error that the Supreme Court identified in Booker was a sentence under a mandatory scheme as opposed to the advisory scheme, right? So in Ameling, what the majority did was say, and we don't know if that worked prejudice, because we don't know what the district court would have done. And I'm sitting here right now thinking, well, this district court obviously indicated that he was going to be lenient with this defendant. And the question I have is, did we know whether he would have been more lenient under an advisory system than under the mandatory system? And respectfully, Your Honor, I understand. I think I understand the Court's question, and I think that there's a couple of differences that can be pointed out. I know in looking over, at least on what my limited understanding of what the new Ameline application should be, is that what we're looking for is we're precluding a judge from enhancing a sentence based upon a mandatory, what they believe a mandatory sentencing scheme is. I think the circumstances in this case are far outside of that in that he started from a statutory mandatory place. It did not start from a place that was dictated by the guidelines. It was dictated by statute. And that was where this Court started. This Court was then given the ability in the vehicle to take away that statutory bar with absolutely no mandate from the guidelines as to where that should fall. And he could exercise full discretion as far as how far to take that bar down in exercising a sentence for this particular defendant. It's an interesting argument. I understand the argument, and I find it intriguing. However, under a limited Ameline remand, all we would be saying to the judge is, is the government right? Right? And I agree with that. But I think that what the district court did in exercising of this particular sentence is that he exercised it. I think you can look at this record and say that he did not feel constrained by any guideline, because when he exercised his discretion as far as what ultimate sentence to apply to Mr. Youngman, he did so in light of comparison to other cooperating defendants who had provided assistance in this very large particular case and a concern as far as where the culpability lied. And that was what he relied on in deriving the ultimate sentence, not that he felt that there was any compulsion to keep him at a particular guideline range. How do you deal with the statement in both Ameline and Moreno-Hernandez that all cases pending on direct appeal at the time that Booker was decided must be given a limited remand? I think that the first inquiry to that particular statement is whether Booker, based upon the application of Booker and a mandatory guideline scheme, requires that review. And I think even in the Ameline decision, the sentencing judge's enhancement of Ameline's sentence is reliance upon judgment findings under the then-mandatory guidelines. That's the first threshold inquiry. And I think this case was not based upon a mandatory guideline scheme application. It was based solely upon a statutory application. So it doesn't even meet the first threshold question, which would require, then, that Booker remand as discussed in Ameline in the subsequent case. So I don't think we even get to that first threshold question of whether Booker applies in this particular case. And I think that some of the other circuits are beginning to look at that particular line of cases to determine if it does meet that first threshold question. And I think the Second Circuit was one of them, and I believe the Tenth Circuit was one, and some have left it to be addressed at a later time. So I think it's the first threshold question that this case doesn't meet. And all that Ameline does require remand, that's after you've applied Booker. Booker qualifies in this particular case. And, Your Honor, just to just briefly address the issue of what to count for purposes of that criminal history point, I think that Mr. Schweda makes an argument with respect to application of Redmond, yet does not discuss or even review this Court's decision in the Marks case. And I think the Marks case decision is very analogous to what can be reviewed as far as counting that prior criminal history point. And the Marks case does recognize that while a State case can allow for an attack as to the constitutionality of a particular conviction, it does not alter or extinguish that prior conviction. And the defendant concedes, and it is clear that that conviction still stands today. It has not been set aside, vacated, or otherwise expunged. And so it is still a qualifying conviction under the same analysis this Court applied in Marks. I don't believe Redmond stretches so far back as to invalidate and overturn every prior driver's license suspended conviction in the State of Washington. I think that's a stretch as far as application of Redmond. And so, therefore, the district court, I think, was correct to say that it was still a conviction. It should not be subject to collateral attack in Federal court, and the Court was right to then count that prior conviction in the defendant's criminal history calculation. Thank you. We would submit that Marks is different. Marks, the statute in Marks is very similar to application notes clause A. It talks about the crime itself. It doesn't have a clause like B where it has been ruled constitutionally invalid in a prior case. The Marks kind of analysis is fact-intensive, and it didn't deal with a crime that the highest court in the State, but we do have it here. And we would also urge, Your Honors, that if you don't agree with that, that this is still, at the time, was a mandatory sentencing guideline case. The judge strictly adhered to the guidelines, and that's really pointed out by the fact of the strict analysis that he made in deciding whether to apply the safety valve. Certainly, in this new sentencing era, an imperfect safety valve analysis would be something that a court should consider. Thank you, Counsel. U.S. v. Youngman will be submitted.
judges: Thompson, T. Nelson, Wardlaw